# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1162

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Junior C. Menteer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September  9, 2003

Filed:  November 21, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

After a jury convicted Junior C. Menteer of being a felon in possession of a firearm and ammunition, the district court[1] sentenced him to 240 months imprisonment under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had three prior violent felonies.  Menteer appeals his conviction and sentence arguing 1) the district court erred in denying his motion to suppress evidence from the allegedly unlawful search of his vehicle, 2) the district court erred in

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

admitting incriminating statements he made following the search because the government did not introduce those statements during his suppression hearing, 3) one of the three prior convictions used to trigger armed career criminal status should not have counted as a violent felony, and 4) the federal firearm statutes are unconstitutional.  We affirm.

I

On April 4, 2001, Trooper Glen Ward of the Missouri State Highway Patrol received a dispatch call informing him the driver of a U-Haul truck traveling north on U.S. Highway 65 had no driver's license.  Trooper Ward located the truck near Trenton, Missouri, and stopped it shortly after the driver drove through a stop sign at the bottom of an exit ramp.  The driver exited the truck, but reached back in and appeared to grab something as the trooper approached.  Ward drew his gun and told the driver to show his hands.  The driver did, and the trooper holstered his weapon.

The trooper identified the driver as Menteer, and verified Menteer had no driver's license.  Ward issued Menteer a summons, explaining it block by block as was his habit.  After Menteer signed the summons, Ward told him he was free to go but asked if he had anything illegal in the vehicle.  Menteer initially replied no, and Ward asked for consent to search the vehicle.  Menteer signed a consent form to search the vehicle.

After Menteer signed the form, Ward became concerned about Menteer's ability to read the form.  So the trooper read the form to him and asked again whether Menteer consented to the search.  Menteer said he did.  Trooper Ward asked again whether there was anything illegal in the vehicle, and Menteer said there was a gun under the front seat.  Ward found a fully-loaded pistol under the front seat in the area where Menteer had been reaching at the time of the initial stop. Ward also discovered two boxes of ammunition and loose .22 caliber shells in a duffle bag inside the

vehicle. After determining Menteer was a convicted felon, Ward placed Menteer under arrest and transported him to the Grundy County (Missouri) Sheriff's Department. The total time of the stop and detention prior to arrest was fifteen to twenty-five minutes.

Lieutenant James Ripley of the Missouri State Highway Patrol subsequently transported Menteer from the Grundy County Sheriff's Department to Kansas City, Missouri. During the trip, Menteer talked out loud to himself, stating among other things, "I forgot the gun was there when I told that officer he could look," and "I'm guilty. I'm just going to plead guilty and get it over with," and "I just should have killed the mother f***er."

The next day, the government filed a criminal complaint charging Menteer with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Five days later, a grand jury indicted Menteer in a two-count indictment (one count for the for the gun and one for the ammunition). The indictment also charged that Menteer was an armed career criminal under the ACCA because he had three prior convictions for violent felonies – a 1972 conviction for second degree burglary, a 1991 rape conviction, and a 1992 conviction for escape from a penal institution.

Prior to trial, Menteer filed a motion to suppress the firearm and ammunition, alleging the initial stop and detention were unlawful. The district court denied the motion. At trial, Menteer stipulated to his status as a convicted felon. He also stipulated the firearm and ammunition had traveled in interstate commerce and the weapon was operable. The government called Ward and Ripley as witnesses, with Ripley testifying about the incriminating statements Menteer made during the trip to Kansas City. The jury found Menteer guilty on both counts. The district court applied the ACCA and sentenced Menteer to 240 months imprisonment, rejecting Menteer's claim that his 1972 conviction for second degree burglary did not constitute a violent felony. Menteer filed this timely appeal.

II

Menteer contends the evidence found in the search of his vehicle should have been suppressed because the length of his detention was unreasonable and lasted beyond the proper scope of the initial stop. He relies in large part upon United States v. Ramos, 20 F.3d 348 (8th Cir.), panel reh'g granted, 42 F.3d 1160 (8th Cir. 1994), which held that the continued detention of defendants, wholly unrelated to the purpose of the initial stop of their vehicle, was unreasonable and justified suppression of evidence found in a search of the vehicle. 20 F.3d at 352-53. Reviewing the factual findings supporting the district court's denial of the suppression motion for clear error, and the legal conclusions based upon those facts de novo, United States v. Kriens, 270 F.3d 597, 603 (8th Cir. 2001), we reject Menteer's claim.

Menteer's reliance upon Ramos is unavailing. On rehearing the panel held that although the continued unreasonable detention of the Ramos brothers violated the Fourth Amendment, the subsequent voluntary consent to search the vehicle purged the primary taint. Ramos, 42 F.3d at 1164. Thus, even if we assume Menteer's detention lasted beyond a time related to the purpose of the initial stop (an issue we do not reach), Menteer does not dispute the fact that he consented to the search of his vehicle. Therefore, his consent purged any Fourth Amendment violation that may have occurred as a result of an unreasonably long detention following the initial traffic stop. See United States v. Johnson, 58 F.3d 356, 357-58 (8th Cir. 1995) (discussing the Ramos decisions and upholding the denial of a suppression motion where the defendant voluntarily consented to the search of his vehicle).

Menteer also argues the incriminating statements he made to Lieutenant Ripley should not have been admitted during trial because the government failed to introduce those statements during the evidentiary hearing on his motion to suppress. We disagree. At the time of the evidentiary hearing, Menteer never sought to suppress the statements he made to Lieutenant Ripley – he only challenged the initial stop,

detention, and search by Trooper Ward – so we fail to understand why the government had any obligation during the hearing to introduce Menteer's statements to Ripley. Furthermore, the statements made to Ripley were spontaneous and not the product of interrogation, and therefore we see no legitimate basis for suppression in any event. E.g., United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) ("The Miranda protections are triggered only when a defendant is both in custody and being interrogated.").

Menteer next contends his 1972 conviction for second degree burglary does not count as a "violent felony" under 18 U.S.C. § 924(e).[2] We review this claim de novo. United States v. Griffith, 301 F.3d 880, 884 (8th Cir. 2002).

Menteer was convicted under Missouri's pre-1979 burglary statute, which in some instances defined burglary more broadly than "generic" burglary, such that a conviction under that statute may or may not constitute a violent felony under the ACCA. See Taylor v. United States, 495 U.S. 575, 599-600 (1990) (examining Missouri's statute).[3] In cases where a state statute defines burglary more broadly than generic burglary, Taylor indicates a court should not consider the facts underlying the conviction, and can only look to the charging papers and/or jury instructions to determine whether all the elements of generic burglary are present. Id. at 602.

---

[2]Section 924(e) defines a "violent felony" in relevant part as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary . . . ." 18 U.S.C. § 924(e)(2)(B) & (B)(ii).

[3]"[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor, 495 U.S. at 598. Missouri's pre-1979 burglary statute included "nongeneric" burglaries, such as "breaking and entering 'any booth or tent, or any boat or vessel, or railroad car.'" Id. at 599 (quoting Mo. Rev. Stat. § 560.070 (1969) (repealed)).

Menteer claims the information in his presentence report (PSR) was inadequate to show his conviction had the elements of generic burglary (specifically, nothing in the PSR indicates what part of the Missouri statute he admitted violating), and the government failed to introduce the charging papers at sentencing.

The government counters that the PSR set forth a sufficient factual background to establish the conviction counts as a violent felony, wherein it stated "Menteer forcibly entered a residence, armed with a deadly weapon, with the intent of robbing the victim." PSR at ¶ 49. The government relies on the fact Menteer did not object to the PSR's characterization of his criminal conduct.

We note several circuits have wrestled with the issue whether Taylor forbids a district court from relying on a statement in a PSR if such reliance constitutes a consideration of the underlying facts rather than the conviction itself. E.g., United States v. Palmer, 68 F.3d 52, 59 (2d Cir. 1995) ("We believe . . . that a current presentence report prepared *for a sentencing court* presented with the [ACCA] enhancement issue would ordinarily be a surrogate for the 'elaborate factfinding process regarding the defendant's prior offenses' that was criticized in Taylor, 495 U.S. at 601, . . . and that employment of the PSR in this case would thus be at odds with . . . Taylor, the applicable Guidelines commentary [§ 4B1.2 cmt. n.2], and the vast majority of the pertinent circuit court precedents."); see also United States v. Sacko, 178 F.3d 1, 7-8 (1st Cir. 1999) (limiting district court's resort to presentence report to that of determining the character of the conviction and forbidding an examination of the underlying facts to ascertain whether violence was used).

In this circuit, however, Menteer's failure to object to the PSR's factual characterization of his conduct, a characterization which satisfies the generic elements of burglary, is dispositive. In United States v. Balanga, 109 F.3d 1299 (8th Cir. 1997), a defendant failed to object to the PSR's description of his prior convictions, a description which indicated his prior convictions were consistent with

convictions for generic burglary. 109 F.3d at 1304. We affirmed the district court's sentence enhancement under the ACCA. Id.

Arguably, Balanga is distinguishable because the issue was not raised before the district court, and we reviewed for plain error only. See id. at 1302-03. Here, Menteer raised the issue before the district court, so our review is plenary. We nonetheless conclude Menteer's failure to object to the PSR is dispositive. In United States v. Kriens, a defendant also argued the district court erred in enhancing his sentence under the ACCA by failing to consider the charging papers; we disagreed because the defendant had stipulated in his plea agreement he had been convicted of an attempted burglary which satisfied the generic elements of burglary. Kriens, 270 F.3d at 604-05. We held the admission in the plea agreement shifted the burden to the defendant to show his conviction fell outside the generic definition of burglary. Id. at 605.

In this case, paragraph 49 of the PSR set forth a description of the conviction which satisfies the generic elements of burglary, and Menteer's failure to object to that portion of the PSR constitutes an admission of those facts. See United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999) ("[U]nless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes."); see also United States v. Shinault, 147 F.3d 1266, 1278 (10th Cir. 1998) ("[T]he district court was justified in relying on the presentence report for proof of the . . . conviction [because t]he defendant . . . did not object to the presentence report on the ground that the . . . conviction was inaccurate."). Thus, Menteer had the burden of showing his conviction fell outside the generic definition of burglary after having admitted to the facts contained in the PSR. He did not and has not shown his 1972 burglary conviction fell outside the generic definition of burglary, and therefore the district court correctly sentenced Menteer under the ACCA.

Finally, Menteer claims the federal firearm statutes violate his constitutional due process rights. He argues the government should not only be required to prove his knowing possession of a firearm, but also that he knew it was illegal for him to possess a firearm. Menteer relies upon the Supreme Court's decisions in Lambert v. California, 355 U.S. 225 (1957), and Staples v. United States, 511 U.S. 600 (1994).

In Lambert the Supreme Court applied a narrow exception to the general maxim "ignorance of the law is no excuse." The case involved the defendant's wholly passive conduct — her failure to register as a convicted felon with the City of Los Angeles without actual knowledge of any duty to register. The Court held "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." 355 U.S. at 229.

Menteer contends his possession of a firearm is wholly passive conduct, and therefore Lambert requires the government to prove he knew it was illegal for him to possess a firearm. Because we have already dismissed the notion that violations of the federal firearm statutes involve passive conduct, we reject this contention. See United States v. Udofot, 711 F.2d 831, 840 (8th Cir. 1983) ("Unlike Lambert . . . this case involves active, not passive, conduct – the delivery of firearms and ammunition to a common carrier for interstate and foreign shipment"); see also United States v. Jester, 139 F.3d 1168, 1170 (7th Cir. 1998) (indicating the act of possessing a firearm that has traveled in interstate commerce is a "volitional" one).

In Staples, the Supreme Court addressed a violation of the National Firearms Act, 26 U.S.C. §§ 5801-5872, which required fully automatic weapons to be registered and made it a crime to possess unregistered firearms covered by the Act. 26 U.S.C. § 5861(d). The particular firearm involved was a semi-automatic AR-15 rifle, modified with M-16 parts without any externally visible indication the weapon was thereafter fully automatic. At issue was whether the statute required the

government to prove a defendant not only knowingly possessed the firearm, but also knew the weapon was capable of automatic fire.

The Court noted that, even though statutes regulating potentially harmful or injurious items typically do not require the *mens rea* element that a defendant know the illegality of his conduct, 511 U.S. at 607, "there is a long tradition of widespread lawful gun ownership by private individuals in this country [such that their potential destructiveness or dangerousness alone] cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting § 5861(d) as not requiring proof of knowledge of a weapon's characteristic." Id. at 610, 612. The Court therefore held the "Government should have been required to prove [Staples] knew of the features of his AR-15 that brought it within the scope of the Act." Id. at 619.

Menteer suggests the import of Staples is that when a statute criminalizes what would otherwise be considered traditionally lawful conduct, i.e., the possession of a firearm, the government must prove a defendant knew of the illegality of his conduct unless there is a legitimate expectation the firearm is subject to regulation. E.g., United States v. Barr, 32 F.3d 1320, 1323-24 (8th Cir. 1994) (explaining Staples and holding government need not prove defendant knew it was illegal to possess a sawed-off shotgun because such a gun is not a traditionally lawful weapon). Menteer argues he did not have a legitimate expectation his possession of a firearm was subject to regulation.

In Bryan v. United States, 524 U.S. 184 (1998), however, the Supreme Court explained and limited its holding in Staples. The Court said Staples did not hold "it was necessary to prove that the defendant knew that his possession was unlawful [but only] that he knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." 524 U.S. at 193 (internal quotations and citations omitted). The Court continued "[t]hus, unless the text of the statute

dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."  Id.; see also United States v. Emerson, 270 F.3d 203, 217 (5th Cir. 2001) ("Bryan and Staples make clear that the necessary *mens rea* in this context does not require knowledge of the law but merely of the legally relevant facts.").  Menteer does not argue the text of § 922(g)(1) dictates a result different from that mandated by Bryan, and we see nothing in the text of the statute that would dictate a different result.  Thus, all the government had to prove in this case was that Menteer knew he possessed a firearm; the government did not have to prove Menteer knew it was illegal to do so.

Moreover, Menteer is a convicted felon.  Therefore, even if Menteer's interpretation of Staples was correct, the possession of a weapon by a convicted felon is not considered traditionally lawful conduct.  See United States v. Hutzell, 217 F.3d 966, 969 (8th Cir. 2000) ("[T]he possession of a gun, especially by anyone who has been convicted of a violent crime, is nevertheless a highly regulated activity, and everyone knows it.").

## III

We affirm the judgment of conviction and sentence in all respects.

_____

-10-