# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2451

_____

United States of America,                      *
                                               *
        Plaintiff - Appellee,       *
                                               *    Appeal from the United States
    v.                                 *    District Court for the District
                                               *    of Minnesota.
Tyrone Shadale Oaks,                           *
                                               *
        Defendant - Appellant.      *

_____

Submitted: February 12, 2010
Filed: May 26, 2010

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Tyrone Oaks was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), the district court[1] sentenced Oaks to 293 months' imprisonment. Oaks raises numerous issues on appeal involving the conduct of his trial and his sentencing. We affirm.

_____

[1]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

## I

On July 18, 2007, at approximately 1:00 a.m., Officer David Palmer of the Minneapolis Park Police was conducting a routine patrol of Lake Calhoun in Minneapolis. Palmer spotted Oaks and three other persons–Oaks's girlfriend Lisa Broadway, Anthony Young, and S.J. (Broadway's teenage daughter)–in the park after hours. Upon approaching the group approximately twenty-five feet away, Palmer observed Oaks and Broadway pass items between themselves and Broadway placing an item in her front pocket. Palmer believed a drug transaction was occurring and noted the group was beginning to disburse. As Oaks began to walk away, Palmer observed him reach into the waistband of his pants to retrieve an object and make a throwing motion toward the lake. Immediately thereafter Palmer heard a loud splash.

Palmer got out of his patrol vehicle, ordered the four to stop, and detained them. A search of Broadway uncovered marijuana and one tablet of what Palmer believed to be Ecstacy. When questioned about what he had thrown into the lake, Oaks claimed he was disposing of marijuana. Shortly thereafter, Oaks, and then Young, fled the scene on foot but were recaptured with the assistance of a canine unit.

Palmer and a second officer searched the area where Palmer observed Oaks dispose of the unknown item. Within minutes they recovered a loaded 9 mm handgun from the water. After Oaks was recaptured, he was returned to the scene where Palmer positively identified him as the person who threw the item into the water.

Oaks was indicted with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). In advance of trial, defense counsel became aware of threats Oaks made to the trial judge. Counsel moved for the judge to disqualify himself, arguing the threats would prevent the court from administering the case fairly and objectively. The court denied the request and the case proceeded to trial.

At trial, Palmer testified to the above events. During cross-examination, Palmer stated he was unable to see what Oaks threw in the lake because shadows from nearby shrubbery prevented him from seeing clearly. Defense counsel attempted to impeach Palmer by pointing out he had not mentioned shrubbery in his earlier description of the events. On redirect, Palmer reviewed a written statement made near the time of the incident that indicated Oaks threw the item in the direction of "weeds" and "vegetation," and the government argued his earlier statement and trial testimony were consistent. Palmer also testified on redirect the nearest street light was approximately 150 feet from where the four persons were gathered. Defense counsel sought to cross-examine Palmer further on these two points but the district court denied the request.

The government also offered the testimony of S.J., who stated she overheard Oaks ask Broadway, "Should I throw it?" and observed Oaks throw a large black pistol into the lake. Conversely, Oaks, Young, and Broadway testified and denied Oaks had a gun or that he disposed of it in the lake.

As an element of the charged offense, the government had to prove Oaks was a convicted felon. The government offered four prior convictions it argued qualified as felony convictions. In advance of trial, Oaks stipulated he was a convicted felon and the government was precluded from offering the convictions to prove his status as a felon. However, the district court allowed the government to introduce evidence of Oaks's prior conviction for aggravated robbery. The robbery conviction involved the possession of a firearm and the government successfully argued it was admissible under Rule 404(b) of the Federal Rules of Evidence to prove Oaks was not mistaken about his status as a convicted felon and his intent to possess the gun.

At the close of the evidence, the district court instructed the jury the government had to prove beyond a reasonable doubt Oaks knowingly possessed the handgun. The instruction stated knowingly "means that he was conscious and aware of his action, realized what he was doing or what was happening around him, and did

not act because of ignorance, mistake, or accident." Defense counsel did not object to the instruction.

The jury convicted Oaks and a presentence investigation was ordered. After reviewing the presentence investigation report (PSR), Oaks submitted various objections but did not object to any information in the PSR detailing his four prior felony convictions. Additionally, Oaks did not object at sentencing when the district court, relying on the unobjected-to information in the PSR, determined Oaks's prior felony convictions qualified him for enhanced penalties under ACCA.

After Oaks was convicted, but before sentencing was held, his relationship with defense counsel deteriorated and counsel moved to withdraw. Counsel noted he had met with Oaks to review the PSR and was told Oaks no longer wanted him to continue his representation. A hearing was held and Oaks asked to dismiss his attorney and have substitute counsel appointed. Oaks told the district court he would proceed pro se if substitute counsel was not appointed. The district court granted the motion to withdraw but refused to appoint substitute counsel and advised Oaks he would have to represent himself. Days later, the district court reconsidered and appointed substitute counsel. At sentencing, the district court, in addition to other sentencing enhancements, applied ACCA and sentenced Oaks to 293 months' imprisonment.

II

Oaks raises numerous issues on appeal. We will address each argument in turn.

A.    The Trial Judge's Refusal to Recuse Himself

Oaks first argues the trial judge erred by refusing to recuse himself after he was made aware Oaks had threatened him. Oaks either sent threatening correspondence to the district court or made statements while in jail threatening the judge which were

communicated to marshals and ultimately the judge. As a result, the marshals and court security personnel were more visible when Oaks was in the courtroom. When defense counsel noticed the heightened security measures at a pretrial hearing, he objected, fearing the presence of additional officers during trial would prejudice the jury. The judge held a sidebar and stated he "deem[ed] [Oaks] a threat." He further admonished defense counsel not to tell Oaks about the conversation. Defense counsel moved for the judge's recusal, arguing the threats would cause the court to favor the government and be antagonistic to Oaks. The court refused the request. Oaks now argues the court's legal rulings during the course of the trial and the lengthy sentence it imposed reflect the court's bias.

We review a judge's refusal to recuse for an abuse of discretion. Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002). Under section 455(a), a judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Congress amended section 455 in 1974 "to clarify and broaden the grounds for judicial disqualification and to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1974)." Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988). This court applies an objective standard of reasonableness in determining whether recusal is required. "The question is 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.'" United States v. Dehghani, 550 F.3d 716, 721 (8th Cir. 2008) (quoting Moran, 296 F.3d at 648).

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992).

We note that where a judge's opinions are based on facts introduced or events occurring in the course of the current proceedings, those opinions

do not warrant recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. While a defendant's threat against a judge may in some cases raise a sufficient question concerning bias on the part of that judge, recusal is not automatic on the mere basis of the judge's knowledge of the threat.

United States v. Gamboa, 439 F.3d 796, 817 (8th Cir. 2006) (internal citations and quotation marks omitted).

Oaks argues the trial judge's bias is reflected in the comments made from the bench indicating he deemed Oaks a threat, various adverse legal rulings during the proceedings, and the 293-month prison term which was imposed. The brief comments made by the district court do not, of themselves, indicate any "deep-seated favoritism or antagonism that would make fair judgment impossible." Id. The court's lack of bias is also reflected in the contested rulings, which, as shown below, were legally sound. There is no evidence suggesting any adverse rulings were motivated by bias on the part of the court. See United States v. Schwartz, 535 F.2d 160, 165 (2d Cir. 1976) ("Adverse rulings, standing alone, do not establish judicial bias or prejudice, nor create a reasonable question of judicial impartiality.") (citation omitted). Further, the sentence was imposed after the court correctly applied ACCA and calculated the proper Guidelines sentencing range. As a result, we conclude the court did not abuse its discretion by denying the recusal motion.

B.      The "Knowingly" Jury Instruction

Oaks next argues the district court gave an erroneous jury instruction defining the term "knowingly." The district court instructed the jury "knowingly" meant Oaks was "conscious and aware of his action, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake or accident." Oaks, citing United States v. Dixon, 548 U.S. 1, 5 (2006), argues the court should have instructed the jury that he "had knowledge of the fact he possessed the firearm."

According to Oaks, the district court should have adopted the Supreme Court's definition of "knowingly" and the district court's definition was misleading.

Defense counsel failed to object to the instruction. Where trial counsel fails to raise an error at trial, this court can correct the error where there is "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (citation omitted). Oaks "bears the burden of persuasion" with respect to proving his rights were prejudiced, and he normally can meet the requirement only by showing the alleged error affected the outcome of the case. United States v. Olano, 507 U.S. 725, 734 (1993). If Oaks meets his burden on the first three prongs, the court "may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Pirani, 406 F.3d at 550 (citation omitted). Here, the instruction does not constitute error and Oaks's arguments fail.

Jury instructions are adequate if, "taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." United States v. Sherer, 653 F.2d 334, 337 (8th Cir. 1981). It is settled law in this circuit that a district court's failure to define "knowledge" or "knowingly" does not constitute "error, much less plain error." United States v. Smith, 635 F.2d 716, 720 (8th Cir. 1980) (holding there is no need to define "knowledge" because the word has the meaning assigned it in common usage and a juror would already understand the word); see also United States v. Williams, 923 F.2d 76, 78 (8th Cir. 1991) (per curiam) ("In the Manual of Model Criminal Instructions for the District Courts of the Eighth Circuit . . . , it is stated that 'the Committee believes that in most cases the word "knowingly" does not need to be defined.' Clearly, it was not plain error to omit such a definition.").

In this case, the district court did not omit a definition of "knowingly." This court's precedent suggests a definition which comports with the common meaning of

its usage will pass appellate review. The district court instructed the jury the government needed to prove Oaks was conscious of what he was doing, aware of what was going on around him, and did not act because of ignorance, mistake or accident. Nothing about this definition suggests anything other than the term's common meaning. Moreover, the district court's definition, while different in form from the Supreme Court's definition in <u>Dixon</u>, did not alter the common substantive meaning of the term. Accordingly, the district court did not commit any instructional error, much less any error that affected Oaks's substantial rights.

### C. Rule 404(b) Evidence of Prior Aggravated Robbery Conviction

Oaks next assigns error to the district court's order allowing the government to offer evidence of his prior conviction for aggravated robbery under Rule 404(b) of the Federal Rules of Evidence.

Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). The rule prohibits evidence of prior bad acts used to circumstantially prove a person has a propensity to commit acts of that sort. <u>United States v. Trogdon</u>, 575 F.3d 762, 766 (8th Cir. 2009).

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404 advisory committee notes (1972).

Rule 404(b) provides, however, evidence of prior bad acts "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) is thus "a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." United States v. Simon, 767 F.2d 524, 526 (8th Cir. 1985) (citation and internal quotation marks omitted). Thus, evidence of prior bad acts "probative of the crime charged" is not excluded under Rule 404(b), United States v. DeLuna, 763 F.2d 897, 913 (8th Cir. 1985), and the court will only find error in a 404(b) question if the district court abused its discretion, Simon, 767 F.2d at 526.

To be admissible under Rule 404(b), the evidence must be 1) relevant to a material issue raised at trial, 2) similar in kind and close in time to the crime charged, 3) supported by sufficient evidence to support a jury finding the defendant committed the other act, and 4) its probative value is not substantially outweighed by its prejudicial value. United States v. Turner, 583 F.3d 1062, 1066 (8th Cir. 2009).

Here, the government offered the aggravated robbery conviction because Oaks committed the crime while carrying a handgun. According to the government, it was relevant in this instance to prove Oaks's knowledge and intent. Oaks contends he did not place his knowledge and intent at issue because his defense was that he did not possess or throw the handgun into the lake.

Oaks's argument, however, is foreclosed by this court's earlier precedent. Knowing possession of a firearm is an element of 18 U.S.C. § 922(g)(1), and Oaks placed his knowledge of the firearm's presence at the scene on his person at issue by pleading not guilty to the crime and requiring the government to prove his guilt beyond a reasonable doubt. United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006); United States v. Chesney, 86 F.3d 564, 572 (6th Cir. 1996). "Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge

-9-

and intent." <u>Walker</u>, 470 F.3d at 1274. Oaks's prior conviction for armed robbery addresses the material issue of his knowledge of the presence of the firearm and his intent to possess it. <u>See</u> <u>Walker</u>, 470 F.3d at 1274 (holding the defendant's prior conviction for armed robbery addressed his knowledge and intent to possess the firearm). We therefore reject Oaks's argument and conclude the district court did not abuse its discretion in admitting evidence of Oaks's prior aggravated robbery conviction.[2]

D.    Additional Cross-Examination of Officer Palmer

Oaks next argues the district court erred when it refused defense counsel's request for additional cross-examination of Officer Palmer following his re-direct.

The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination of witnesses. <u>United States v. Warfield</u>, 97 F.3d 1014, 1024 (8th Cir. 1996). However, courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns

_____

[2]Oaks's alternative arguments on this point are similarly without merit. Namely, the district court acted within its broad discretion in concluding the probative value of Oaks's prior conviction was not substantially outweighed by the danger of unfair prejudice under Rule 403. <u>See</u> <u>United States v. Banks</u>, 553 F.3d 1101, 1107 (8th Cir. 2009) (acknowledging the great deference given to the district court's Rule 403 balancing test). Oaks's prior conviction was not introduced to prove his status as a felon, thus diminishing the limited rule he analogizes to in <u>Old Chief v. United States</u>, 519 U.S. 172 (1997). <u>United States v. Dorsey</u>, 523 F.3d 878, 880-81 (8th Cir. 2008) (noting <u>Old Chief</u> distinguishes cases involving prior convictions under Rule 404(b)). In addition, the district court provided a limiting instruction directing the jury to only consider the evidence with respect to Oaks's knowledge and intent. <u>See</u> <u>United States v. Kent</u>, 531 F.3d 642, 651 (8th Cir. 2008) ("Moreover, this Court has been reluctant to find that the evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction, instructing the jury not to use the evidence as proof of the acts charged in the indictment.") (citations and quotation marks omitted).

about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); see also United States v. Beckman, 222 F.3d 512, 524 (8th Cir. 2000) (same). A Confrontation Clause violation is shown when a defendant demonstrates a reasonable jury might have received a significantly different impression of a witness's credibility had counsel been allowed to pursue the proposed line of cross-examination. Harrington v. Iowa, 109 F.3d 1275, 1277 (8th Cir. 1997). A trial court's decision to limit cross-examination will not be reversed unless there has been a clear abuse of discretion and a showing of prejudice to the defendant. United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997).

During direct examination, Officer Palmer stated he was unable to see what Oaks threw in the lake because shadows from tall shrubs or trees nearby prevented him from seeing clearly. On cross-examination, defense counsel sought to impeach Palmer by pointing out he had not mentioned shrubbery in his earlier description of the events. On redirect, Palmer reviewed a written statement made near the time of the incident that indicated Oaks threw the item in the direction of "weeds" and "vegetation," and the government argued his earlier statement and trial testimony were consistent. Palmer also testified on redirect the nearest street light was approximately 150 feet from where the four persons were gathered. When defense counsel asked to re-cross examine Palmer more extensively on these points, the district court refused the request.

On appeal, Oaks fails to explain what additional questions counsel wished to ask and how the additional cross-examination would have significantly impacted Palmer's credibility. Oaks suggests his counsel wished to revisit the purported discrepancy between "shrubbery" versus "weeds" and "vegetation," but the issue had been addressed and further cross-examination would have been cumulative. See United States v. Beck, 557 F.3d 619, 621 (8th Cir. 2009) (holding the proposed

testimony was duplicative and had little impact on the case). Similarly, the alleged scarcity of lighting in the area, which would negatively impact Palmer's ability to accurately see what occurred, was also before the jury in Palmer's prior testimony, and counsel was free to argue the point at closing. See United States v. Wipf, 397 F.3d 677, 683 (8th Cir. 2005) (holding the restriction on defendant's cross-examination was permissible, in part, where the defendant was already granted considerable leeway to cross-examine the witness and impeach his credibility). Counsel's additional questions would not have added to the testimony or detracted from Palmer's credibility. Accordingly, the district court did not abuse its discretion in disallowing Oaks's counsel additional cross-examination of Palmer.

E.      Oaks's Right to Self-Representation

Oaks next claims the district court violated his Sixth Amendment right to self-representation when it appointed substitute counsel. The appointment of substitute counsel is within the sound discretion of the trial court. United States v. Mentzos, 462 F.3d 830, 839 (8th Cir. 2006).

While the Sixth Amendment does not explicitly guarantee the right of self-representation, such a right is "necessarily implied by the structure of the Amendment." Faretta v. California, 422 U.S. 806, 819 (1975). In order to represent himself, a defendant must "knowingly and intelligently" forgo the "traditional benefits associated with the right to counsel." Id. at 835. While the defendant is not required to have the skill and expertise of a lawyer to represent himself, he should know the dangers of self-representation, so the record must establish he made an informed choice. Id.

The right to self-representation is not absolute. Martinez v. Court of Appeal of Cal., 528 U.S. 152, 161 (2000). "A defendant who wishes to waive his right to counsel, and thereby proceed pro se, must do so clearly and unequivocally." United

States v. Washington, 596 F.3d 926, 939 (8th Cir. 2010).  The defendant must first make his request to proceed pro se in a timely manner, after which the district court retains the ability to "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  United States v. Edelmann, 458 F.3d 791, 808 (8th Cir. 2006) (citing Faretta, 422 U.S. at 834).  The district court also has the authority to refuse to allow a defendant to represent himself when "the defendant is unable to 'knowingly and intelligently' forgo the 'traditional benefits associated with right to counsel.'"  Id. (quoting Faretta, 422 U.S. at 835).

Oaks's claimed Sixth Amendment violation is without basis in fact.  The record demonstrates Oaks expressed displeasure with his appointed attorney, forcing the attorney to move to withdraw.  At the motion hearing, Oaks unequivocally stated, "I ask that I have better counsel, that I have a lawyer who will represent me."  Motions Tr. at 3.  Oaks indicated he would not proceed with his current appointed counsel.  The court advised him it would not appoint substitute counsel and Oaks would be forced to represent himself if the motion was granted.  Oaks then agreed to represent himself, but expressed concern over his ability to properly prepare.  See id. at 9 ("Can I – I mean, if I'm not allowed to go to the law library, I find it impossible to try to even start to fight for myself.").

Within days after refusing the request for substitute counsel, the district court reversed itself and appointed a new attorney.  The court recognized the obstacles Oaks faced in accessing legal materials due to his heightened custody status, as voiced by Oaks during the motions hearing.  The district court believed these obstacles ultimately impacted Oaks's ability to competently represent himself, and accordingly it appointed substitute counsel in line with his original request.  Under these circumstances, the factual predicate for Oaks's current claim is based on a misrepresentation of the record and his allegation of error is rejected.  The district court acted within its discretion in appointing Oaks substitute counsel.

-13-

F.     Due Process Violation at Sentencing

Oaks next argues the district court violated his right to due process under the Fifth Amendment by relying on misinformation contained in the PSR to find him eligible for an enhanced sentence under ACCA. Specifically, Oaks argues the information in the PSR about his prior felonies, which made him ACCA-eligible, was not accurate and the district court should not have used it to enhance his sentence. Once again, the factual predicate for his claim is based on Oaks's mischaracterization of the record.

This court has repeatedly held "that unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999) (collecting cases). Thus, a defendant's "failure to object to the PSR's factual characterization of his conduct . . . is dispositive." United States v. Menteer, 350 F.3d 767, 771 (8th Cir.2003); see also United States v. Arrieta-Buendia, 372 F.3d 953, 955 (8th Cir. 2004). Oaks failed to object to the information contained in the PSR detailing his prior felony convictions. Thus, the district court could accept the information as true. Oaks's attempt to save his claim of error by characterizing it as a due process violation is unavailing because his failure to object obviates any argument he could make that the information was inaccurate.

We also reject Oaks's attempt to analogize this case to Townsend v. Burke, 334 U.S. 736 (1948). In Burke, the defendant was uncounseled and sentenced based upon inaccurate information in his criminal record. 334 U.S. at 740-41. Neither of these circumstances exist in this case because Oaks was represented by counsel and failed to object to information contained in the PSR, which, as noted above, permitted the district court to accept the information as true. Accordingly, we reject Oaks's claim of error based on his failure to object to the accuracy of the information in the PSR.

G.     Sufficiency of the Evidence

Oaks next argues the evidence was insufficient to prove his status as a convicted felon as required under 18 U.S.C. § 922(g)(1).

As an initial matter, Oaks incorrectly asserts the jury convicted him under § 924(e) instead of § 922(g)(1). Section 922(g)(1) is the statute defining the substantive offense of being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). One of the elements of the offense requires the government to prove, and the jury to find, that the defendant was a convicted felon. United States v. Butler, 594 F.3d 955, 964 (8th Cir. 2010). Ordinarily, a defendant convicted under section 922(g)(1) faces a maximum term of imprisonment of ten years. 18 U.S.C. § 924(a)(2). Section 924(e), or the Armed Career Criminal Act, is a sentencing provision, and the determination of whether a defendant qualifies for the enhanced penalties contained therein is a determination made by the sentencing court – not the jury. See United States v. Van, 543 F.3d 963, 966 (8th Cir. 2008) (discussing the district court's imposition of ACCA in calculating the defendant's sentence). If ACCA applies and the defendant has three previous convictions for a violent felony, he is subject to a more stringent minimum term of imprisonment of fifteen years. United States v. King, 598 F.3d 1043, 1044 (8th Cir. 2010).

As a result of the distinction above, we assume for purposes of this appeal that Oaks is arguing the evidence was insufficient to prove to the jury beyond a reasonable doubt he was a convicted felon for purposes of § 924(g)(1). This argument is without merit. The record shows Oaks stipulated in advance of trial to his status as a convicted felon in order to prevent the government from presenting evidence of all his felonies to the jury. Because he stipulated to being a convicted felon, he cannot now argue the evidence was insufficient to prove that element. See United States v. Poulack, 236 F.3d 932, 938 (8th Cir. 2001) ("Because [the defendant] stipulated to the

reduced drug quantity figure when he had knowledge that quantity was a key factor, he waived his right to a jury determination on that issue.").

Oaks's challenge to the district court's application of ACCA at sentencing is similarly without merit. First, Oaks correctly notes the government must prove each of the facts necessary to support a sentencing enhancement by a preponderance of the evidence. United States v. Razo-Guerra, 534 F.3d 970, 975 (8th Cir. 2008). However, as noted above, the district court may accept any undisputed portions of the PSR in determining whether the government has met its burden. Id. Contrary to Oaks's argument, his not guilty plea to the charge in the indictment does not suffice to establish an objection to the PSR at sentencing regarding his prior convictions. Id. (noting the defendant has to object to specific factual allegations in the PSR, or the court may accept those facts as true in calculating its sentence). The PSR concluded Oaks was convicted of three prior felony crimes of violence, and he did not object to this determination. Therefore, the district court properly adopted the findings in the PSR as facts for its consideration in determining Oaks's sentence. We therefore reject Oaks's argument regarding the sufficiency of the evidence and his ACCA status.

H.      Oaks's Conviction for Attempted Breaking and Entering

Oaks next contends the district court erred when it considered his juvenile conviction for attempted breaking and entering for purposes of ACCA. We review de novo whether an offense is a violent felony under ACCA. United States v. Walker, 555 F.3d 716, 721 (8th Cir. 2009).

Once again, Oaks's argument is based on a mischaracterization of the record. The PSR – to which Oaks did not object – lists the conviction as an adult conviction, not a juvenile conviction as Oaks claims. Because he failed to object, he cannot now argue the information was inaccurate. As a result, the district court properly concluded Oaks's attempted breaking and entering conviction qualified as a violent

-16-

felony under ACCA. See James v. United States, 550 U.S. 192, 203-05 (2007) (concluding attempted burglary qualifies under ACCA because it poses the same kind of risk as a completed burglary); United States v. Fish, 928 F.2d 185, 187-88 (6th Cir. 1991) (concluding the defendant's Michigan conviction for attempted breaking and entering qualified as a violent felony for section 924(e) purposes).

I.    Oaks's Conviction for Unlawfully Driving Away an Automobile

Finally, Oaks argues the district court erred when it used his Michigan conviction for unlawfully driving away an automobile as one of the predicate felonies necessary to enhance his sentence under ACCA.

The government concedes under United States v. Williams, 537 F.3d 969 (8th Cir. 2008), the conviction for unlawfully driving away an automobile is not a violent felony for purposes of ACCA. See Begay v. United States, 128 S. Ct. 1581 (2008). (holding that driving under the influence of alcohol is not a violent felony under ACCA). However, ACCA only requires three prior felony convictions for its provisions to apply. Walker, 555 F.3d at 721. Aside from his unlawfully driving away an automobile conviction, Oaks had felony convictions for attempted breaking and entering, assault in the third degree, and aggravated robbery in the first degree. Oaks only challenges the first of these convictions, which, as discussed above, qualified under ACCA. Accordingly, any error committed by the district court in considering Oaks's unlawfully driving away an automobile conviction was harmless because he maintained at least three other qualifying ACCA predicate offenses. See United States v. Comstock, 531 F.3d 667, 679 (8th Cir. 2008) (holding any error by the district court in considering a conviction that did not qualify as a violent felony was harmless where the defendant had at least three other qualifying convictions). Because any error by the district court did not affect Oaks's substantial rights, we reject his argument.

Oaks's remaining arguments are without merit. First, the district court was not required to apply a beyond a reasonable doubt standard, rather than a preponderance of the evidence standard, in determining his sentencing enhancements. See Pirani, 406 F.3d at 551 n.4 ("Nothing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime."). See also U.S.S.G. § 6A1.3, cmt. background ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.").

Second, Oaks's rights were not violated by any lack of reasonable notice regarding the allegation of three prior convictions and the increased sentence under section 924(e). Notice by the government of its intention to seek an enhanced sentence is not required under ACCA. United States v. Zuniga, 553 F.3d 1330, 1336 (10th Cir. 2009); United States v. Mauldin, 109 F.3d 1159, 1162 (6th Cir. 1997). Moreover, Oaks did have notice of the enhanced sentence by way of the indictment and the PSR, which specifically cited section 924(e) and listed his prior convictions which the government considered violent felonies.

Finally, Oaks asserts the district court violated his due process rights by failing to provide him a hearing to determine the existence of the three prior convictions. We reject this argument because the district court discussed the application of ACCA during the sentencing hearing, during which Oaks was provided an opportunity to object to the factual findings contained in the PSR. The district court properly adopted those findings in the PSR as facts for its consideration after Oaks failed to object. Accordingly, Oaks was not denied his due process rights and was not entitled to a separate hearing.

For the foregoing reasons, we affirm the judgment of the district court.

_____