# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2513

_____

Kevin Johnson

*Petitioner - Appellant*

v.

Troy Steele

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 17, 2020
Filed: June 1, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

SMITH, Chief Judge.

Kevin Johnson appeals the district court's[1] order denying his motion to recuse in his habeas corpus proceeding brought pursuant to 28 U.S.C. § 2254. He also asks

_____

[1]The Honorable Stephen N. Limbaugh, Jr. United States District Judge for the Eastern District of Missouri.

this court to issue a certificate of appealability (COA) on three of his habeas corpus claims. We affirm the district court's denial of the motion to recuse and also deny Johnson's application for a COA.

## I. *Background*

A jury found Johnson guilty of first-degree murder for killing a Kirkwood, Missouri police officer. *State v. Johnson*, 284 S.W.3d 561, 567 (Mo. 2009) (en banc). Following the jury's recommendation, the state trial court sentenced Johnson to death. *Id.* The Missouri Supreme Court affirmed the conviction and sentence on direct appeal. *Id.* It later affirmed the denial of state post-conviction relief. *Johnson v. State*, 406 S.W.3d 892, 897 (Mo. 2013) (en banc).

Johnson filed this federal habeas petition, raising 26 claims for relief. Johnson moved to recuse United States District Judge Stephen N. Limbaugh, Jr. Specifically, Johnson's motion alleged two grounds: (1) Judge Limbaugh was a member of the Missouri Supreme Court when Johnson first filed his notice of direct appeal to that court, and (2) Judge Limbaugh, while on the state appellate court, authored certain dissenting opinions in other Missouri death penalty cases, the "tone, tenor, and content" of which brought into question Judge Limbaugh's impartiality in Johnson's case. Pet'r's Mot. for Recusal at 4, *Johnson v. Steele*, No. 4:13-cv-02046-SNLJ (E.D. Mo. 2017), ECF No. 120.

Judge Limbaugh denied the motion to recuse. As to the first issue, Judge Limbaugh noted that he "did not participate in any substantive decision in this case while it was pending before the Supreme Court of Missouri," "was wholly unaware that the appeal had been filed, and . . . did not review any records whatsoever connected with the case." Mem. & Order at 2, *Johnson v. Steele*, No. 4:13-cv-02046-SNLJ (E.D. Mo. 2017), ECF No.135. Furthermore, "by the time [he] left the Court on July 31, 2008, neither briefing nor argument had taken place, much less a decision rendered." *Id.* Judge Limbaugh confirmed he "did not participate in the case in any

respect"; as a result, he concluded that his "presence on the Supreme Court at the start of the case [was] no ground to question [his] impartiality." *Id.*

Johnson next questioned Judge Limbaugh's impartiality based on his prior dissenting opinions in other Missouri death penalty cases. *See State v. McFadden (McFadden II)*, 216 S.W.3d 673 (Mo. 2007) (en banc) (Limbaugh, J., concurring in part and dissenting in part); *State v. McFadden (McFadden I)*, 191 S.W.3d 648 (Mo. 2006) (en banc) (Limbaugh, J., dissenting). Judge Limbaugh cited "the general rule . . . that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" Mem. & Order at 2 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Nonetheless, Johnson argued that the prior cases were "related" to his case because they concerned the same "issue": "the St. Louis County Prosecutor's Office has systematically committed *Batson*[2] violations by excluding black citizens during jury selection." Mem. & Order at 3. In *McFadden I* and *McFadden II*, Judge Limbaugh "determined that the facts and the law did not establish that *Batson* violations were committed." *Id.* He explained that his "disagreement with the majority in those cases did not reflect any ill-will or antagonism towards the defendant or to the propriety of *Batson* claims generally, nor any favoritism to the St. Louis County Prosecutor's Office." *Id.* Judge Limbaugh made clear that he would "again apply the law to the facts [in the present case], considering them anew, and with the utmost impartiality." *Id.* He found "no valid ground for recusal." *Id.*

Subsequently, the district court denied Johnson's petition for writ of habeas corpus. Thereafter, Johnson applied for a COA on the court's adjudication of seven claims. The district court denied the application for a COA.

---

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

## II. *Discussion*

Johnson appeals the district court's denial of his motion to recuse. He also applied for a COA with this court. An administrative panel of this court denied the motion. He now asks the merits panel of this court to reconsider the denial of the application for a COA.

## A. *Recusal*

Johnson argues that the district court abused its discretion by refusing to disqualify itself for two reasons: (1) Judge Limbaugh's presence on the Missouri Supreme Court during the early pendency of Johnson's direct appeal, and (2) Judge Limbaugh's *McFadden* dissents prejudged issues in Johnson's case.

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). To make this determination, we apply an objective standard that asks whether all the attendant circumstances would raise doubt in the mind of an average person about the judge's impartiality. *Tyler v. Purkett*, 413 F.3d 696, 704 (8th Cir. 2005). "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *United States v. Delorme*, 964 F.3d 678, 681 (8th Cir. 2020) (quoting *United States v. Oaks*, 606 F.3d 530, 537 (8th Cir. 2010)). We review for an abuse of discretion a judge's denial of a motion to recuse. *Id.* at 680.

## 1. *Tenure on the Missouri Supreme Court*

"[I]t is considered improper—indeed is an express ground for recusal, *see* 28 U.S.C. § 47—in modern American law for a judge to sit on the appeal from his own case." *Russell v. Lane*, 890 F.2d 947, 948 (7th Cir. 1989). "The same principle is involved . . . . in federal habeas corpus cases [because] the federal district judges do sit in review of the proceedings in the state courts. . . . In no substantive sense can that process be readily distinguished . . . from appellate review of decisions of trial

-4-

courts." *Rice v. McKenzie*, 581 F.2d 1114, 1117 (4th Cir. 1978). When a federal district judge conducts habeas review of state convictions under 28 U.S.C. § 2254, "the district court judge . . . [acts] in the capacity of an appellate court." *U.S. ex rel. Britz v. Thieret*, 737 F. Supp. 59, 61 (C.D. Ill. 1990). "[If] the judge had previously ruled on the issues while on the state bench[,] then the circumstances would call for the judge to hear an appeal of his own decision . . . ." *Id.* Put another way, "the judge would be required 'to find that he had affirmed an unconstitutional conviction, and, implicitly, that by doing so he had become complicit in sending [the petitioner] to prison in violation of [the petitioner's] constitutional rights.'" *Id.* (alterations in original) (quoting *Russell*, 890 F.2d at 948).

We have held that a district judge conducting habeas review was not required to recuse himself because he had been a member of the Missouri Court of Appeals at the time that the petitioner had moved for rehearing or transfer of his state court appeal to the Missouri Supreme Court. *Tyler v. Purkett*, 413 F.3d 696, 704–05 (8th Cir. 2005). Under Missouri Supreme Court Rules, a decision to transfer a case from the Missouri Court of Appeals to the Missouri Supreme Court was based on whether the voting judges believed "the general interest or importance of a question involved in the case or for the purpose of reexamining existing law" required the transfer. *Id.* at 704. We assumed that all members of court "ruled on [the petitioner's] motion." *Id.* But we concluded that the federal district judge's vote on the transfer motion would not cause a reasonable person "to question a jurist's impartiality as to the merits of the case." *Id.* at 705. As a result, we held that recusal was not required. *Id.*

Johnson concedes that Judge Limbaugh left the Missouri Supreme Court *before* Johnson's case was briefed, argued, or decided. When ruling on Johnson's habeas petition, Judge Limbaugh never had to review any of his past state court rulings. Instead, like the district judge's vote on the transfer motion in *Tyler*, Judge Limbaugh's mere access to legal filings in Johnson's case prior to his departure from

the Missouri Supreme Court never impacted the *merits* of Johnson's case. Judge Limbaugh left the court before briefing, oral argument, or a decision was rendered. On these facts, a knowledgeable, reasonable person would not question Judge Limbaugh's impartiality as he took no part in the consideration of Johnson's state appeal.

## 2. McFadden *Dissents*

Second, Johnson argues that Judge Limbaugh's prior dissents in an unrelated case while a member of the Missouri Supreme Court required his recusal from Johnson's federal habeas case. Then-Justice Limbaugh authored dissents in *McFadden I* and *McFadden II*. In these dissents, he disagreed with the majority opinions, which held that the State violated *Batson*. *See McFadden I*, 191 S.W.3d at 658–62; *McFadden II*, 216 S.W.3d at 679–84. According to Johnson, these dissents show that Judge Limbaugh prejudged issues in Johnson's case because Johnson raised a *Batson* claim and was convicted in St. Louis County—the same jurisdiction the *McFadden* cases arose from.

The Supreme Court has made clear that

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.

*Liteky*, 510 U.S. at 555 (citation omitted).

"[U]nfavorable judicial ruling[s]" are not sufficient "to require disqualification absent a showing of 'pervasive personal bias and prejudice . . . .'" *Holloway v. United*

*States*, 960 F.2d 1348, 1351 (8th Cir. 1992) (quoting *Davis v. Comm'r*, 734 F.2d 1302, 1303 (8th Cir. 1984) (per curiam)).

Having reviewed Judge Limbaugh's dissents in *McFadden I* and *McFadden II*, we find no evidence of "pervasive personal bias and prejudice" against Johnson. *See id.* Instead, these dissents reflect Judge Limbaugh's consideration of the specific facts and circumstances before him in the *McFadden* cases. *See McFadden II*, 216 S.W.3d at 684 ("Under the *totality of the circumstances*, I am quite unwilling to convict the prosecutor and the judge of racial prejudice, and I would hold that the trial court's denial of the *Batson* challenge was not clearly erroneous." (emphasis added)); *McFadden I*, 191 S.W.3d at 659–60 (recognizing that the *Batson* analysis must be done under the totality-of-circumstances test).

Accordingly, we affirm the district court's denial of Johnson's motion to recuse.

### B. *COA*

Johnson also asks this court to grant his application for a COA and reverse the district court's adverse judgment and rulings on three of his claims for habeas relief. He concedes that "an administrative panel of this Court" "denied a certificate of appealability." Appellant's Br. at 8. Nevertheless, he contends that "[i]t is well-established that a merits panel has authority to grant a COA." *Id.* at 20.

Having reviewed Johnson's application for a COA, we decline to disturb the administrative panel's denial of the application for a COA. Accordingly, we again deny the application for a COA.[3]

---

[3]Because we again deny Johnson's application for a COA, we need not address the government's argument that we lack authority to reconsider Johnson's application for a COA.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____