**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 31, 1996**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-50709
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALAN WADE JOHNSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, E. GARZA, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

FACTS

In October 1990, special agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") were informed that a destructive device consisting of dynamite and a detonation cord had been found at a place of business in El Paso, Texas called Sharkey's Billiards. An employee of Sharkey's suggested the name of the

defendant, Alan Wade Johnson ("Johnson"), as a possible suspect. The investigation led to the discovery that Johnson, a convicted felon, had purchased a .45 caliber pistol and a nine millimeter pistol at Benny's Pawn Shop in El Paso. In addition to being a felon in possession, it appeared that Johnson had executed treasury form 4473 to acquire these firearms and had denied his prior felony conviction. The case against Johnson was presented to an Assistant United States Attorney ("AUSA") in June, 1991. In the meantime, however, the State of Texas had charged Johnson with aggravated robbery and capital murder. The firearms which were central to the ATF investigation were also apparently evidence in the state criminal prosecution. The AUSA in charge of the case decided to defer to the state and to decline federal prosecution for the firearms violations at that time. The ATF investigation then lay dormant until Johnson's state trial on the charge of capital murder. Johnson was found "not guilty" by the jury. The ATF then revived its investigation, and the original indictment in the instant case was returned in December 1993. A superseding indictment was returned in July 1994.

PROCEEDINGS BELOW

The superseding indictment charged Johnson with six counts of possession of a firearm by a felon, two counts of making a false statement on an ATF form, and one count of possession of a silencer that had not been registered to him. The Government also gave notice of its intent to seek an enhanced penalty under 18 U.S.C. §

2

924(e)(1) based on Johnson's six prior felony convictions for crimes of violence. Johnson filed a motion to dismiss the case for vindictive prosecution. After hearing the testimony of the state and federal prosecutors detailing the decision-making process which preceded the federal indictment, the district court determined that Johnson had not shown prosecutorial vindictiveness and denied this motion.

On July 25, 1995, following a jury trial that began the previous day, Johnson was found guilty as charged in Counts One through Four and Counts Six through Nine of the indictment.[1] Johnson timely filed a notice of appeal, contending that the district court erred in refusing to dismiss the superseding indictment due to prosecutorial vindictiveness.

## DISCUSSION

Johnson contends that we may find prosecutorial vindictiveness if we agree with his assertion that the State of Texas used the federal prosecution as a tool for subjecting Johnson to successive prosecutions. He bases this argument upon an exception to the dual sovereignty doctrine. In order to understand his argument we must first examine that doctrine.

---

[1] The district court granted Johnson's motion to require the Government to elect between counts five and eight because these counts were multiplicitous. The Government elected to proceed to trial on count eight and dismissed count five.

Under the dual sovereignty doctrine, successive prosecutions by separate sovereigns for crimes arising out of the same acts are not barred by the Double Jeopardy Clause. *United States v. Lanza*, 260 U.S. 377, 382, 43 S. Ct. 141, 142-43, 67 L. Ed. 314 (1922). However, "[t]he Supreme Court has suggested that an exception to the dual sovereign doctrine exists when prosecution by one sovereign is used as a tool for successive prosecution by another sovereign." *Id.* (citing *Bartkus v. Illinois*, 359 U.S. 121, 123-24, 79 S. Ct. 676, 678, 3 L. Ed. 2d 684 (1959)). It is this exception, referred to as the *Bartkus* exception, that Johnson urges us to consider.

Johnson requests this court to apply the *Bartkus* exception, not in the context of an exception to the dual sovereignty doctrine, but rather as an exception to the general rule that successive prosecutions by different sovereigns tend to negate a finding of prosecutorial vindictiveness. *See*, *e.g.*, *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990)("[w]here there are successive prosecutions by two sovereigns . . . it is improbable that a realistic likelihood of vindictiveness exists"); *United States v. Schoolcraft*, 879 F.2d 64 (3d Cir.), *cert. denied*, 493 U.S. 995 (1989)("the role of a separate sovereign in bringing charges against a defendant minimizes the likelihood of prosecutorial abuse"); *United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983) ("the fact that the prosecutions of the defendants are

4

by two different sovereigns, each acting independently under its own laws and in its own interest without any control of or by the other, renders inapplicable the concept of prosecutorial vindictiveness"). Assuming, *arguendo*, that the *Bartkus* exception is applicable to the general rule that successive prosecutions by different sovereigns negate a finding of prosecutorial vindictiveness, we will review the findings of the trial court.

A district court's factual findings on prosecutorial vindictiveness are reviewed for clear error and the legal principles which guide the district court are reviewed *de novo*. *See*, *e.g.*, *United States v. Bullis*, 77 F.3d 1553, 1558 (7th Cir. 1996); *United States v. Wall*, 37 F.3d 1443, 1448 (10th Cir. 1994); *United States v. Schoolcraft*, 879 F.2d 64, 67 (3d Cir.), *cert. denied*, 493 U.S. 995, 110 S. Ct. 546, 107 L. Ed. 2d 543 (1989). *But see*, United *States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996) (noting that the proper standard of review for vindictive prosecution is unsettled in the Ninth Circuit). The inquiry into prosecutorial conduct in a pretrial context may be distinguished from conduct occurring thereafter. *United States v. Goodwin*, 457 U.S. 368, 379-82, 102 S. Ct. 2485, 2492-93, 73 L. Ed. 2d 74 (1982). A prosecutor has broad discretion during pretrial proceedings "to determine the extent of the societal interest in prosecution." *Id*. at 382, 102 S. Ct. at 2493. Absent a presumption of vindictiveness in this context, the defendant must prove that the prosecutor's

5

conduct was actually vindictive. *United States v. Molina-Iguado*, 894 F.2d 1452, 1455 (5th Cir.), *cert. denied*, 498 U.S. 831, 111 S. Ct. 2485, 112 L. Ed. 2d 66 (1990). This court examines the prosecutor's conduct in light of the entire proceedings to determine whether it gives rise to a presumption of vindictiveness. *Id.* at 1454. In determining if a presumption of vindictiveness is warranted,

> the appropriate inquiry is whether . . . for example, where, after the defendant's prior exercise of a procedural or substantive legal right, or his having succeeded in reversing a conviction on appeal, the prosecution acts arguably to punish the exercise of such rights, by increasing the measure of jeopardy by bringing additional or more severe charges[.]

*United States v. Ward*, 757 F.2d 616, 619-20 (5th Cir. 1985).

The following relevant evidence was adduced at the hearing on the motion to dismiss. During the latter part of 1990 and the early part of 1991, agents of the ATF became aware that Johnson was a convicted felon who had purchased two firearms between June and December 1990. A case report was presented to the United States Attorney's Office in June 1991 for possession of a firearm by a felon and falsifying ATF records in order to obtain a firearm. David Nichols ("Nichols"), the AUSA who was reviewing the case, declined prosecution at that time because Johnson was facing charges in Texas state court, and because a firearm central to the ATF investigation was needed as evidence in the state criminal prosecution. Nichols testified that he decided to postpone

6

prosecution until "the state ran its course, whatever it was, or would be."

The State of Texas tried Johnson for capital murder beginning on October 16, 1993, and he was acquitted on December 1, 1993. During or shortly after the capital-murder trial, Johnson filed a grievance with the State Bar of Texas (the Bar) against two assistant district attorneys on the ground that they had withheld exculpatory evidence during the course of the trial. In March 1994, the Bar's grievance committee made a finding of misconduct.

Shortly after the verdict, an assistant district attorney met with prosecutors from the United States Attorney's Office to discuss prosecuting Johnson on federal charges and obtaining the state's evidence. Government prosecutors learned that the state still had pending robbery charges against Johnson. However, a decision was made to proceed with the federal prosecution to avoid the appearance that the federal government was "coming in and sweeping up after the state." On December 15, 1993, a federal grand jury returned a two-count indictment, and the nine-count superseding indictment was returned on July 6, 1994.

Johnson has failed to demonstrate that circumstances warranting a presumption of vindictiveness exist in this case. Johnson has shown no more than that the Government brought charges for firearms violations after he was acquitted of capital murder in state court. The district court found that Johnson's federal investigation "was 'put on hold' not only because the state charges

7

were more serious, but also because some of the evidence essential to the federal prosecution was in the hands of the state." The district court further found that "the federal prosecutors had no knowledge of the grievance or the reprimand prior to the return of the superseding indictment." Those findings are not clearly erroneous. Absent any presumption of vindictiveness and absent any evidence of such, Johnson cannot prove that the Government's prosecution was used as a tool of the state. Consequently, the district court did not err in refusing to dismiss Johnson's superseding indictment.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.