# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2066
_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Walker

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 14, 2014
Filed: June 24, 2014
[Unpublished]

_____

Before RILEY, Chief Judge, LOKEN and BYE, Circuit Judges.

_____

PER CURIAM.

Anthony Walker pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court[1] determined that Walker had three prior violent felony convictions, making him subject to the penalties

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

prescribed in 18 U.S.C. § 924(e)(1). The court also applied the cross reference in U.S.S.G. § 2K2.1(c)(1)(B), finding that Walker "used or possessed any firearm . . . in connection with the commission . . . of another offense" that resulted in death. The court cross referenced to the offense level for first degree murder in § 2A1.1, resulting in an advisory guidelines range of 360 months to life in prison. The court imposed a 360-month sentence. Walker appeals, arguing the evidence at sentencing was insufficient to establish by a preponderance of the evidence that he used or possessed any firearm in connection with a murder offense, and he did not have three prior violent felony convictions. Reviewing the district court's factual findings for clear error and legal issues *de novo*, we affirm. See United States v. Tunley, 664 F.3d 1260, 1264 (8th Cir. 2012) (standard of review).

Paragraphs 8-17 of the Presentence Investigation Report (PSR) summarized facts relevant to the cross referencing issue. On January 16, 2012, police found three victims who had died of gunshot wounds at a Kansas City residence. On January 26, an undercover officer accompanied a confidential source (CS) to the Kansas City residence of Walker, a nine-time convicted felon, where the CS purchased a semiautomatic .40 caliber firearm and ammunition. Ballistic evidence indicated that this firearm was used to kill the three homicide victims; the ammunition matched shell casings found at the homicide scene. Investigation of cell phone records indicated that Walker's cell phone was used to call one victim the night of the murders and "pinged" off a tower near the homicide scene. Walker was arrested for being a felon in possession on February 1. The shoes he was wearing matched impressions taken inside the residence where the triple homicide occurred. Walker claimed that the CS tried to sell Walker the .40 caliber firearm, but he admitted agreeing to hold the gun for the CS in exchange for crack cocaine. On February 2, police recovered a second revolver in the rear hatch of Walker's wife's car, which the CS had reported seeing on January 26. Walker's wife had consented to the search and denied knowing the gun was there.

Paragraph 19 of the PSR recounted that on May 21, officers conducted a lengthy interview of Walker's nephew, Clint Jones. "During the interview, Jones implicated Walker as the person who murdered the three victims . . . on January 16, 2012." Jones also related that Walker took a revolver from the victims' residence and gave it to Jones. Shown a picture of the second firearm recovered from Walker's wife's car, Jones said, "yep, look like it."

Prior to sentencing, Walker objected to all the paragraphs of the PSR reciting the above facts. At the first of two sentencing hearings, defense counsel agreed "the court can take into account" the facts recited in paragraphs 8-17 of the PSR, which the court described as "circumstantial stuff." However, prompted by the court's concern as to the reliability of "remote hearsay," defense counsel did not waive his objection to Paragraph 19 because it included "a direct admission attributable to the defendant relative to these exact crimes that the government seeks the [§ 2K2.1(c)] enhancement on." The court then continued the sentencing hearing.

The sentencing hearing resumed nearly three months later. Clint Jones, appearing by subpoena and testifying as a defense witness, denied going with Walker to the victims' residence and seeing dead bodies and denied that Walker ever told Jones "that he had killed those people." After argument, the district court found by a preponderance of the evidence "that this defendant did kill the victims and later tried to use Jones to help search for money and drugs." Citing specific pages from the lengthy transcript of Jones's interview, the court explained:

> The interview of -- of Clint Jones all in all is the principal thing that we have to rely on in my judgment. As happened today, he shifted back and forth and he did not tell the truth much of the time. . . . I am satisfied that the way the interview ended is the way the facts are, and that he was in the house and saw them dead.

On appeal, Walker argues the evidence was insufficient to support the cross-referencing enhancement because the district court acknowledged that, without the statements attributed to Clint Jones during his police interview, the circumstantial evidence appeared to be insufficient to show that Walker used the firearm in connection with a homicide offense, and "[a]t the [sentencing] hearing Clint Jones under oath flatly contradicted and refuted his previous statements linking [Walker] to the homicides." The government correctly argues that this contention turns on a credibility issue and, as we have frequently noted, a district court's credibility findings are "virtually unreviewable on appeal." United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992). Here, the credibility of nephew Jones in the interview and at the sentencing hearing posed a difficult question that the district court was in the best position to decide. There was no clear error.

Walker further argues that the government failed to prove that the other offense -- the three murders -- was sufficiently related to the firearm offense of conviction to support the § 2K2.1(c)(1)(B) enhancement. We disagree. While the term "in connection with" no doubt requires some linking of another offense to the charged felon-in-possession offense, the district court did not err in concluding that using the same firearm to kill three persons ten days prior to the felon-in-possession arrest warranted a § 2K2.1(c)(1)(B) enhancement. See United States v. Stroud, 673 F.3d 854, 858, 862 (8th Cir. 2012), cert. denied, 133 S. Ct. 1581 (2013); United States v. Davis, 360 F.3d 901, 903-04 (8th Cir. 2004). Finally, Walker argues that he should not have been sentenced as an armed career criminal under 18 U.S.C. § 924(e)(2) because he merely acted as an unarmed, non-violent lookout during a predicate conviction for second-degree robbery. Walker admits having no case law supporting this contention, and it is contrary to our well-established "categorical" approach to determining whether a prior conviction was for a "violent felony."

The judgment of the district court is affirmed.

_____