# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2149

_____

United States of America

*Plaintiff - Appellee*

v.

Curtis Adams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2015
Filed: April 24, 2015

_____

Before WOLLMAN, SMITH, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Curtis Adams appeals his conviction for being a felon in possession of a firearm. At trial, the district court[1] granted the government's motion in limine to admit evidence of Adams's previous convictions for firearm offenses under Rule 404(b) of

_____

[1] The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

the Federal Rules of Evidence to show that Adams had the required intent and knowledge to possess the firearm. Adams argues that the evidence of these prior convictions should have been excluded. We affirm.

## I. *Background*

On May 28, 2013, six police detectives approached a group of individuals in Kinlock, Missouri, after observing what appeared to be hand-to-hand drug transactions. Upon seeing the detectives, Adams clutched his waistband and fled the scene through a nearby apartment complex. Four detectives pursued. Detective Chad Hinds testified that, while in pursuit, he saw Adams brandish a semi-automatic pistol and angle his body to point it backwards at the detectives as he fled. Detective Hinds signaled to the other detectives that he saw a firearm and ordered Adams to drop the firearm. When Adams did not comply, Detective Hinds fired two rounds at Adams. According to several detectives, Adams then dropped the firearm in the grass. Detective Sean Becker stayed with the weapon while the others continued the pursuit. The detectives apprehended Adams when he tripped in a grassy area. Detective Becker and Detective William Bates transported Adams to the hospital to treat an injury Adams sustained from his fall. Both detectives testified that while in their custody, Adams made incriminating statements about possessing the firearm.

Adams was indicted for one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Adams pleaded not guilty. The government moved in limine to introduce evidence of Adams's prior convictions under Rule 404(b) to prove his knowledge of firearms and his intent to possess a firearm. These two prior convictions included a 2008 conviction in federal court for being a felon in possession of a firearm and a 2005 state-court conviction for unlawful use of a weapon—carrying a concealed weapon. In both cases, Adams was convicted of carrying semi-automatic pistols similar to the one police alleged he carried on the day of his arrest. At the final pre-trial conference, the district court accepted a stipulation between the parties to delay ruling on the motion until it became relevant at trial.

At the end of the first day of trial and after the jurors had been dismissed, the court revisited the motion in limine. The government suggested that the time was ripe for the court to rule on the motion because Adams's defense elicited testimony that questioned whether he actually possessed the firearm. Adams's defense was essentially based on a theory that the detectives planted the firearm and wrongfully accused Adams of possessing it.

The court and the government engaged in an extensive exchange on the 404(b) factors at issue. The court understood the government's argument for using the prior convictions to prove knowledge: "That he knew what a firearm was[ and] he knew that what he had in his possession was in fact a firearm." However, the court noted, "I understand . . . in another kind of case, 'You knew it was crack cocaine, not a piece of gravel. You knew this was a gun, not a toy.' That, I understand knowledge." Under the Rule 403 standard, however, the court thought that using the prior convictions had very little probative value because "do we really think that there's anybody in the world who doesn't know what a gun is? . . . [S]o the fact that he had this previous gun conviction—does that really show that he knew what a gun was any more than any other human being . . . [?]"

The court also questioned use of the prior convictions to prove intent under 404(b) "because it's always seemed to me that when [the government is] saying [past firearm convictions] prove[] intent, it's really saying propensity." Even Adams's counsel, however, conceded that she "underst[ood] how easily these convictions are admitted in gun cases." The court reflected upon its view that, while Eighth Circuit precedent supporting admission of such evidence is ample, the rationale supporting its probative value remained unsatisfactory. After repeated inquiries to the government, the court acknowledged that the Eighth Circuit has "said many, many times it can be used to show intent. I'm just trying to ask for an explanation for how that works."

Concluding the discussion with counsel, the district court stated:

> If I were writing . . . the law, . . . I would say it's inadmissible; however, I am constrained by the Eighth Circuit, and even though I think that the danger of unfair prejudice outweighs the probative value, I have been told on numerous occasions that I'm not allowed to think that, and so I don't really have a role in this. The Eighth Circuit says that convictions of a similar nature are admissible to show—and then they list the whole thing, and nobody ever explains why, short of knowledge, which I do understand. I mean sometimes if there would be motive or absence—well, whatever, but I—so I think that it is admissible under 404(b). It's a rule of inclusion as the Eighth Circuit tells us and even though it says it's not, and so I will allow it to be admitted because the Eighth Circuit has made it clear that being a felon in possession of a firearm or a conviction for carrying a concealed weapon or unlawful use of a weapon is admissible as 404(b) evidence in a later prosecution for felon in possession of a firearm, and there are probably a hundred Eighth Circuit cases that say that. So I will admit it and find that it's admissible for one of those purposes.

The next day at trial, the court *twice* gave the jury a limiting instruction that they could only consider Adams's prior convictions to show his knowledge or intent, not to show propensity.

Adams's defense strategy was to argue that he did not possess the alleged firearm at all, but that law enforcement officers planted the firearm. The government called the four officers, some of whom were involved in the chase and arrest of Adams, as witnesses. These officers testified that they (1) saw Adams pointing the gun at them; (2) saw Adams drop the firearm; and (3) heard Adams make incriminating statements about possessing the firearm.

Detective Hinds was the first to testify. Detective Hinds lead the foot pursuit of Adams. He testified to being "[t]wenty to 30 feet" behind Adams while in pursuit.

-4-

Detective Hinds testified that he saw "Mr. Adams'[s] right hand come up away from his body, holding a black . . . pistol, at which time it came around and was pointed in our direction." Detective Hinds testified that he yelled "[g]un, gun, gun," unholstered his firearm, and fired two shots at Adams. After his second shot, Detective Hinds testified that "Mr. Adams immediately dropped the firearm to . . . the grass." Detective Hinds continued to pursue Adams while another officer, Detective Becker, stayed behind with the firearm where it lay.

Detective Becker testified next. Detective Becker stated that while he was pursing Adams, roughly "20 feet or so" behind him (and behind Detective Hinds), he also saw Adams pointing the gun back towards the detectives. After another officer (Detective Hinds) fired two rounds at Adams, he testified that he saw Adams drop the firearm. Detective Becker stopped and remained with the firearm while the other detectives pursued Adams. Detective Becker also testified that while he and Detective Bates were transporting Adams to the hospital after Adams's arrest, Adams pointed towards a parked vehicle they were passing on the road. According to Detective Becker, Adams stated that his brother was recently shot at while inside that particular vehicle; the vehicle had bullet holes in its rear. Adams further stated that he had the firearm because he was "attempting to protect himself and his brother." After this testimony, the government re-introduced Exhibit 2A, which was the Springfield Armory 9mm pistol that Adams allegedly possessed. Detective Becker identified the firearm as the one that he saw Adams drop and the one that he personally stayed with until Detective Clay Peeler of the St. Louis County Police later seized it.

Detective Bates was next to testify and corroborated Detective Becker's testimony. Detective Bates testified that he and Detective Becker transported Adams to the hospital after Adams's arrest. During transit, Detective Becker testified that Adams "mentioned he had [the firearm] on him because his brother had been shot at earlier and basically more so for protection." Adams made this statement while they

were passing an old Chevrolet van that his brother owned, which had bullet holes in the rear of the van.

Finally, Detective Nicholas Payne testified. He pursued Adams on a different route in an attempt to cut him off. He testified that after he heard Detective Hinds yell "[g]un," he heard two gunshots. Detective Payne stated that "[a]fter the shots were fired, I observed [Adams] drop the firearm, and he stumbled a little bit, and then he continued running." He testified that he moved the firearm from where Adams dropped it in order to secure it. He did not direct the evidence technician to take photos of the gun where it was dropped.

Adams's defense counsel vigorously cross-examined the detectives. She pointed out that the police reports did not include Adams's alleged confession; also, she highlighted that the detectives did not direct the evidence technician to take photographs of the firearm at the scene. The jury ultimately found Adams guilty, and the court later sentenced him to 120 months' imprisonment.

## II. *Discussion*

Adams argues on appeal that the district court abused its discretion by admitting his prior illegal firearms convictions despite concluding that "the danger of unfair prejudice outweighs the probative value."[2]

Rule 404(b) declares inadmissible "[e]vidence of a crime . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence may be

---

[2]We recognize that the court's language does not track Rule 403 exactly, which allows a court to "exclude relevant evidence if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403 (emphasis added). The government conceded at oral argument, however, that the district court need not recite the Rule 403 verbatim in its finding.

admissible[, however,] for another purpose, such as proving motive, opportunity, *intent*, preparation, plan, *knowledge*, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2) (emphases added). "'We review the district court's admission of evidence of past crimes under [Federal Rule of Evidence] 404(b) for abuse of discretion, and we will not reverse unless the evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts.'" *United States v. Bassett*, 762 F.3d 681, 687 (8th Cir. 2014) (alteration in original) (quoting *United States v. Banks*, 706 F.3d 901, 906 (8th Cir. 2013)), *cert. denied*, 135 S. Ct. 882 (2014). We will only reverse a conviction if the evidentiary error is not harmless. *United States v. Langley*, 549 F.3d 726, 729 (8th Cir. 2008). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Id.* (quotations and citation omitted).

Rule 404(b) evidence is admissible if it is "'(1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect.'" *United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) (quoting *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005)). Once determined admissible under 404(b), evidence must still pass the "substantially outweighed" test of Rule 403. *See Clark v. Martinez*, 295 F.3d 809, 814 (8th Cir. 2002) (finding that evidence that would otherwise be admissible under Rule 404(b) still has to meet the requirements of Rule 403).

Adams argues on appeal that the district court's statements within its Rule 403 analysis precludes the admissibility of his prior convictions. According to Adams, the district court erred in admitting evidence that it had concluded carried more danger of unfair prejudice than probative value. Furthermore, he argues that this error was

not harmless because the unfair prejudice served as a "lure to distract jurors" from "doubts in the detectives' credibility."

We have held on many occasions that prior convictions of firearm offenses are admissible to prove that the defendant had the requisite knowledge and intent to possess a firearm. *See, e.g.*, *United States v. Stroud*, 673 F.3d 854, 861 (8th Cir. 2012); *United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011) ("[The defendant]'s prior firearms offenses address the material issue of his knowledge of the presence of the firearm and his intent to possess it." (citation omitted)); *United States v. Oaks*, 606 F.3d 530, 539 (8th Cir. 2010) ("[The defendant]'s prior conviction for armed robbery addresses the material issue of his knowledge of the presence of the firearm and his intent to possess it." (citation omitted)); *Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) (same).

*Stroud*, for example, is quite similar to Adams's case. In *Stroud*, law enforcement officers heard two gunshots and then saw the defendant running around a corner. 673 F.3d at 857. The officers saw the defendant clutching his waistband as he was running. *Id.* The defendant attempted to climb over a fence, but one of the pursuing officers was able to grab the defendant by the shoulder and keep him from getting over the fence. *Id.* at 858. The officers saw the defendant throw what appeared to be a firearm over the fence in a balled-up t-shirt. *Id.* While one officer stayed with the defendant, who had been placed under arrest, the other officer found the items on the other side of the fence, which included a magnum revolver. *Id.* The defendant was convicted of being a felon in possession of a firearm, but challenged the admission of his prior conviction of unlawfully possessing a machine gun on appeal. *Id.* at 859. We upheld the district court's admission of the prior conviction, finding that the prior conviction "is relevant to [the defendant]'s familiarity with and knowledge that he possessed a firearm." *Id.* at 861.

Thus, under the initial Rule 404(b) analysis, our precedent indicates that previous firearm-related crimes can be relevant to prove that a defendant had the necessary knowledge that a firearm was present on or near his person and that a defendant had the intent to possess the firearm solely, jointly, or constructively.[3] The district court agreed. This case, however, introduces an unusual scenario. Here, the district court agreed that the evidence had a permitted use under 404(b)(2) but then also stated that, in her view, the probative value of the evidence was outweighed by a danger of unfair prejudice. Nevertheless, the court ultimately ruled that the evidence was admissible despite stating misgivings about its potential for unfair prejudice and perceived constraints of this circuit's precedent on the court's Rule 403 discretion. The district court's statements notwithstanding, circuit precedent contains no restriction on a district judge's ability to weigh the factors listed in Rule 403 and admit or exclude evidence that otherwise meets the admissibility requirements of Rule 404(b).

Even assuming arguendo that the district court erred, on this record, we conclude that such error would be harmless. The government presented evidence from multiple witnesses that they saw Adams possess the firearm, saw him discard it, then later heard Adams admit to possessing the firearm. It was the jury's province to believe or disbelieve the testimony of any or all of the officers.

After granting the government's motion in limine, the court twice issued a limiting instruction to the jury—once at the introduction of Adams's prior convictions and again before the jury began its deliberations—to only use the fact of Adams's prior conviction for the limited purposes of showing knowledge or intent. The facts

---

[3]The district court acknowledged Eight Circuit precedent that such prior convictions can be used to show intent. We have held that "[w]hen admitted for the purpose of showing intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." *United States v. Shoffner*, 71 F.3d 1429, 1432 (8th Cir. 1995) (quotation omitted).

of this case present little likelihood that Adams's conviction rested solely on the possibility that the jury ignored those limiting instructions. To the degree it considered evidence of Adams's prior crimes, we presume the jury limited its use to permitted purposes. *See Stroud*, 673 F.3d at 861 (finding that "a limiting instruction diminishes the danger of unfair prejudice arising from the admission of evidence" (quotation omitted)); *Halk*, 634 F.3d at 488 (same); *Oaks*, 606 F.3d at 539, n.2 (same); *Walker*, 470 F.3d at 1275 (same).

The government's evidence that Adams had been previously convicted in state and federal courts for unlawfully possessing firearms had probative value to show that he knew what a firearm was and that he possessed the criminal intent to possess the firearm unlawfully. *See United States v. Washburn*, 728 F.3d 775, 784 (8th Cir. 2013) ("[T]his court has held in similar circumstances that the unfair prejudice did not substantially outweigh the probative value of a defendant's prior conviction for similar schemes because the close similarity of the prior incidents made the evidence especially probative on the question of the defendant's intent and the absence of accident." (citation omitted)).

## III. *Conclusion*

For the reasons stated herein, the admission of the Rule 404(b) evidence and Adams's conviction is affirmed.

_____