# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-2101
_____

United States of America

*Plaintiff - Appellee*

v.

Todd Scott

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2016
Filed: June 13, 2016
[Unpublished]

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

PER CURIAM.

Todd Scott conditionally pleaded guilty to being a felon in possession of a firearm and now appeals the district court's[1] denial of his motion to suppress the

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, adopting the Recommendation of the Honorable Shirley Padmore Mensah, United States Magistrate Judge for the Eastern District of Missouri.

firearm because it was seized without a warrant by St. Louis County police detectives investigating a reported homicide. Scott argues the district court committed clear error in crediting the detectives' testimony that the firearm was tucked in Scott's waistband when they initially confronted him. Concluding this is not the rare case where the district court credits testimony that "is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it," United States v. Wright, 739 F.3d 1160, 1167 (8th Cir. 2014) (quotation omitted), we affirm.

On November 11, 2013, a confidential informant reported to Detective Charles Faasen that Scott and two others were involved in killing an unknown person, that Scott was the shooter, and that the suspects had changed clothes at Scott's residence. Faasen checked Scott's record and learned he had prior gun and drug convictions. The next day, Faasen and Detective Earl Chambers went to a different address, subsequently provided by the informant, to investigate. Faasen testified at the suppression hearing; Chambers did not testify, but his police report was admitted into evidence. Scott testified about other matters but invoked his Fifth Amendment right not to answer questions about the events on November 12, 2013. Thus, the only evidence of those events was provided by the detectives.

When Faasen and Chambers arrived at the address provided by the informant, the owner, another suspect, denied involvement in a murder and gave the detectives written consent to search the residence. During the search, which uncovered blood-spattered clothing, a man came up the rear stairs carrying a laundry basket. He told the detectives he was with "Chelsie and Todd." Faasen assumed that Todd was Todd Scott, and Faasen and Chambers went to the back yard for questioning. When they opened the back door, Faasen saw Scott, whom he recognized from a mug shot, standing with his girlfriend Chelsie outside the driver's side of a Ford Explorer that was facing the residence some 40 feet away.

When Scott saw Faasen, he appeared to reach for the butt of a gun tucked in his waistband. Faasen identified himself as police and yelled "stop" or "don't do it." Scott ran to the rear of the vehicle. Faasen ran to the front of the vehicle and down the passenger side to the rear, while Chambers approached the rear from the driver's side. Faasen saw Scott "messing with his waistband" but momentarily lost sight of Scott when he reached the rear of the vehicle. Faasen did not see anything in Scott's hands nor see him discard anything. Chambers told Faasen he saw Scott come around the driver's side with a gun in one hand and a blue bag in the other hand, put the gun into the bag, discard it, and then approach Chambers, who arrested him.

Noting inconsistencies in the detectives' testimony and police reports, Scott argues that the scenario they described was simply not credible. In particular, he argues, Chambers's report of what happened is not credible because it was not possible for Scott to come up with a blue bag Faasen never saw, shove the gun into the bag, and discard the bag in the few seconds Scott was out of Faasen's sight. He further suggests that "[i]t does not make sense that [Scott], an individual with some prior experience with law enforcement, would flash a previously concealed firearm at police and then try to hide it, rather than . . . using his 50-foot head start to find a location to toss the gun away covertly." Therefore, Scott theorizes, the truth is that he never had the gun on his person; rather, the police found it in the blue bag during an unconstitutional warrantless search of the vehicle. The district court rejected this theory. The court found credible Faasen's testimony that he saw Scott touch or reach for a gun in his waistband that had a wood-handled butt, like the gun found in the blue bag, and concluded that Scott abandoned the gun by discarding it while fleeing from officers who had reasonable suspicion or probable cause to detain him.

We recognize, as did the district court, that Scott's alternative scenario was plausible and Chambers's report that he saw Scott put the gun into a blue bag that Faasen never saw was "suspect." But suppression turned on the credibility of Faasen's testimony that he saw Scott lift his shirt and reach for a firearm when Scott

-3-

saw Faasen come out the back door. Faasen told Scott, a known felon, to stop. Scott instead took flight, and the detectives pursued. There was no evidence that the gun they recovered was not Scott's gun, and no affirmative evidence contradicting the detectives' description of their brief pursuit and Scott's arrest, such as testimony by Chelsie. As the government points out, we have frequently considered cases in which a convicted felon foolishly brandishes and then abandons a firearm in the presence of police. See, e.g., United States v. Adams, 783 F.3d 1145, 1146 (8th Cir. 2015).

"The district court's findings regarding witness credibility are entitled to particularly great deference, and are virtually unreviewable on appeal." Wright, 739 F.3d at 1166-67 (quotation omitted). After careful review of the suppression hearing record, we conclude the district court's critical finding in this case -- that the firearm was in Scott's waistband at the start of his encounter with the detectives -- was not clearly erroneous, and therefore the court did not err in denying Scott's motion to suppress.

The judgment of the district court is affirmed.

_____